NOT FOR PUBLICATION                    [Docket Nos. 19 and 27]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

---

ALLSTATE INSURANCE COMPANY,      :

         Plaintiff,    :

    v.                :

ETHAN J. WOODS, et al.,     :

         Defendants.   :

---

:    Civil No. 07-1451 (RMB)

:    **OPINION**

APPEARANCES:

David D'Aloia, Esq.
Jakob Halpern, Esq.
Saiber, LLC
One Gateway Center
13TH Floor
Newark, NJ 07012
    Attorneys for Plaintiffs

Vincent Morrison, Esq.
Law Offices of Vincent J. Morrison, Esq.
860 Route 168
Suite 204
Turnersville, NJ 08012-3224
    Attorneys for Defendants Ethan Woods and Jane Woods

Barry Hockfield
Hockfiled, Hasner & Associates, PA
425 Route 70 West
Cherry Hill, NJ 08002
    Attorneys for Defendants Deanna Martin, Kristi Martin and
    Francis Martin

**BUMB**, United States District Judge:

**Introduction:**

    This matter comes before the Court upon two motions 1)

1

Defendants', Kristi Martin, Deanna Martin, and Francis Martin, (hereinafter the "Martins"), motion for summary judgment, and, 2) Plaintiff's, Allstate Insurance Company, (hereinafter "Allstate") cross-motion for summary judgment.  Allstate's Federal Rule of Civil Procedure 56(f) response to the Martins' summary judgment motion is also pending.

**Background:**[1]

On August 7, 2005, Jane Woods, a Defendant in this action, was insured under an Allstate Standard Select Value Homeowners Policy, No. 901853924 (the "Policy").  Jane Woods' son, Ethan Woods, resided with her as of August 7, 2005, (at which point he was a minor), and was insured under the Policy.  Pertinent provisions of the Policy state that:

> Subject to the terms, conditions and limitations of this policy, **Allstate** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and covered by this part of the policy.

---

[1] The background facts are drawn from the Parties' Local Rule 56.1. statements.  Plaintiff has objected to the Martins' submission of its response to Plaintiff's statement of material facts as untimely [Docket No. 34].  While the Court agrees that the Martins' submission is untimely, the Court will allow the filing because of the central importance of a Rule 56.1 statement in narrowing the issues in this case and because it is in the best interest of the parties for this Court to proceed with this case on the merits rather than dismiss this matter or disregard the submission on this procedural ground.  See Cooper v. Cape May County Bd. of Soc. Servs., 175 F. Supp. 2d 732, 741 (D.N.J. 2001).

Maffei Decl. Ex. A at 17 (emphasis in original).   An occurrence is defined in the Policy as "an accident . . . during the policy period, resulting in bodily injury or property damage." <u>Id.</u> at 3.  Central to the instant matter are the exclusionary provisions of the Policy which state:

> We do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person.**  This exclusion applies even if:
>
>> a) such **insured person** lacks the mental capacity to govern his or her own conduct;
>> b) such **bodily injury** or **property damage** is of a different kind or degree than intended or reasonably expected; or
>> c) such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.
>
> This exclusion applies regardless of whether or not such **insured person** is actually charged with, or convicted of a crime.

<u>Id.</u> at 18 (emphasis in original).

While the exact details of what occurred are heavily disputed, the incident that gave rise to the instant dispute can be briefly described as follows: On August 6, 2005, shortly before midnight, Ethan Woods was walking with his friend Michael DiPrimeo near the boardwalk in North Wildwood, New Jersey. Earlier in the evening, an unidentified person purchased a glass bottle of rum for the pair, which Woods was holding.  Woods testified that he and DiPrimeo were drinking that night, though

the parties dispute the amount consumed.

At some point, a verbal exchange began between Woods, DiPrimeo and other people across the street, the situation escalated and, at some point, Woods threw the glass rum bottle which hit the ground, shattered and injured, Kristi Martin, a passerby.  The circumstances surrounding the altercation and Woods' behavior during the same are heavily disputed.

Following the incident, Woods was charged in Juvenile Court with Third Degree Aggravated Assault with a Deadly Weapon and Disorderly Conduct.  Woods pled guilty to a Third Degree Aggravated Assault charge.  In 2006, Kristi Martin, by her parents Deanna and Francis Martin, and her parents individually, filed a Complaint in the New Jersey Superior Court, Camden County against Ethan Woods (the "Personal Injury Action").  Allstate appointed counsel to defend Ethan Woods in the Personal Injury Action, subject to a Reservation of Rights.

On March 28, 2007, Allstate filed the above-captioned matter seeking to disclaim coverage for the incident that occurred on August 6, 2005.  Defendants, the Martins, have moved for summary judgment claiming that the incident is covered by the Policy. Allstate has cross-moved for summary judgment arguing that the express provisions of the Policy exclude coverage for this

incident.[2]

**Discussion:**

   *a) Rule 56(f) Motion*

   Ever mindful that "it is 'improper' for a district court to rule on summary judgment without first ruling on a pending Rule 56(f) motion" - this Court will first address Plaintiff's request that the Martin's motion for summary judgment be denied as premature.  Doe v. Abington Friends Sch., 480 F.3d 252, 257 (3d Cir. 2007) (citing St. Surin v. V.I. Daily News, Inc., 21 F.3d 1309, 1315 (3d Cir. 1994)).

   Rule 56(f) states:

   If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
      (1) deny the motion;
      (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
      (3) issue any other just order.

---

   [2] Before proceeding to the substantive discussion, the Court notes that the Martins also failed to properly submit their exhibits in support of their motion to this Court.  Allstate is quite right that documents submitted in support of a motion for summary judgment "must be authenticated by and attached to an affidavit that meets the requirements of [Fed.R.Rule.P.] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." Countryside Oil Co. v. Travelers Ins. Co., 928 F. Supp. 474, 482 (D.N.J. 1995) (quoting 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2722 at 58-60 (2d ed. 1983)(footnote omitted)).  Rejecting these exhibits has little impact here as Allstate has properly submitted many of the same exhibits.

The Third Circuit has interpreted Rule 56(f) "as requiring a party seeking further discovery in opposition to a summary judgment motion to file an affidavit specifying what information is sought, how it would preclude summary judgment if uncovered, and why it had not been previously obtained." Zheng v. Quest Diagnostics, Inc., 2007 U.S. App. LEXIS 22575 at *14 (3d Cir. 2007). Where a 56(f) motion is properly filed and supported, it is generally granted "as a matter of course" because "a court is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery," Doe, 480 F.3d at 257 (internal quotations omitted).

In its 56(f) request, Allstate states that the Martins' motion was premature as discovery had not concluded at the time the motion was filed. More specifically, Allstate had outstanding discovery requests seeking information in connection with Ethan Woods' plea hearing in juvenile court and also information as to whether another insurance policy might cover this incident and exclude any possibility of coverage under the Allstate Policy. See D'Aloia Decl. ¶¶ 40-42, 47, 52.

On March 4, 2008, Allstate updated this Court with the transcript from Woods' juvenile court hearing, but stated that its request for information regarding another homeowners policy was still outstanding. Because this Court finds that the evidence supplied by Allstate, even taken in a light most

6

favorable to the Defendants, demonstrates that coverage under the Policy is unavailable, Plaintiff's 56(f) request will be denied.

### b) Applicable Law

Both Defendants aver that Pennsylvania law applies to this dispute by virtue of a choice of law clause in the applicable Policy.  The full text of that clause states that:

> Subject to the following paragraph, the laws of Pennsylvania shall govern any and all claims or disputes in any way related to this policy.
>
> If a covered loss to property, or any other occurrence for which coverage applies under this policy happens outside Pennsylvania, claims or disputes regarding that covered loss to property, or any other covered occurrence may be governed by the laws of the jurisdiction in which that covered loss to property or other covered occurrence happened, only if the laws of that jurisdiction would apply in the absence of a contractual choice of law provision such as this.

Maffei Dec. Ex. A Endorsement at 1.

Both Defendants aver that the Policy provision makes clear that Pennsylvania law applies and that the only connection with New Jersey is that the loss occurred in this state.  Thus, based on the Policy and a "significant contacts test," the Court need not engage in a choice of law analysis.

Allstate, however, argues that a review of the entire choice of law provision of the Policy reveals that "if New Jersey choice of law principles would dictate the use of New Jersey law in the

absence of the Policy's Pennsylvania choice of law provision,
then the Court should apply it." Pl.'s Br. at 17. Thus, this
Court should engage in a New Jersey choice of law analysis.

Because this Court is hearing this case based on diversity
jurisdiction, it must apply the law of the forum state, including
its choice of law provisions. Woessner v. Air Liquide Inc., 242
F.3d 469, 472 (3d Cir. 2001). The New Jersey choice of law
analysis is a two step process. Rowe v. Hoffman-LaRoche, Inc.,
189 N.J. 615, 621 (2007). First, this Court must determine
whether an actual conflict exists between the laws of the
interested states. Id. Next, "the Court must identify the
governmental policies underlying the law of each state and how
those policies are affected by each state's contacts to the
litigation." Garlick v. Quest Diagnostics, Inc., 2007 U.S. Dist.
LEXIS 95160 at *9 (D.N.J. Dec. 28, 2007)(citing Veazey v.
Doremus, 103 N.J. 244, 510 A.2d 1187, 1189 (N.J. 1986)). If the
application of the laws of either state would produce the same
result, there is no actual conflict. Williams v. Stone, 109 F.3d
890, 893 (3d Cir. 1997). Where there is no actual conflict on a
particular issue, the Court is to avoid the choice of law
question and apply New Jersey law to that issue. Lebegern v.
Forman, 471 F.3d 424, 428 (3d Cir. 2006).

This Court finds no conflict between New Jersey and
Pennsylvania's laws regarding the interpretation of insurance

8

contracts.  In both jurisdictions, the court is required to give effect to clear and unambiguous policy language.  NAV-ITS, Inc. v. Selective Ins. Co. of Am., 183 N.J. 110, 118 (2005)("when interpreting an insurance policy, courts should give the policy's words their plain, ordinary meaning.")(internal quotation marks and citations omitted); Pa. Nat'l Mut. Cas. Co. v. Black, 591 Pa. 221, 237 (2007)("courts must give plain meaning to a clear and unambiguous contract provision unless to do so would be contrary to a clearly expressed public policy").  Moreover, under New Jersey law, the insurer has the burden of bringing the claim within a policy exclusion, but that exclusion, is "presumptively valid and will be given effect if specific, plain, clear, prominent, and not contrary to public policy."  Colliers Lanard & Axilbund v. Lloyds of London, 458 F.3d 231, 236 (3d Cir. 2006)(citing Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 698 A.2d 9, 16 (1997)(quotation marks omitted)).  Similarly, under Pennsylvania law, unambiguous exclusions must also be interpreted pursuant to their ordinary meaning.  Brink v. Erie Ins. Group, 2008 Pa. Super. 7 at *11 (Sup. Ct. Pa. 2008).  As discussed further below, because the application of either Pennsylvania law or New Jersey law would produce the same result, no conflict exists and this Court will apply New Jersey law.[3]

---

[3] The Martins concede that even if New Jersey law applies, the outcome remains the same (although, not surprisingly, they advocate a different outcome from Plaintiff).  Docket No. 31 at

*c) Coverage*

The Martins believe that the incident at issue is covered by the Policy because it is clear that Ethan Woods did not intend or reasonably expect injury to occur.  In sum, the Martins' argument is, that despite the sub-paragraph qualifiers in the Policy, "there is absolutely no evidence (even when viewed indulgently) that Ethan Woods, by throwing the bottle at the ground, 'intended' or 'reasonably expected' an injury to occur, [and] Allstate's attempt to disclaim coverage must fail."  Docket No. 19 at 9.  Instead, the injuries sustained by Kristi Martin are "noting if not an 'idiosyncratic, unforseeable or wholly attenuated consequence' of the fracas. . . ."  Docket No. 31 at 7.  The Woods' echo this argument in their response to Allstate's motion, stating that Ethan Woods testimony supports his claim that he never intended to hit anyone with the bottle and that Allstate cannot prove that Ethan had the intent or reasonable expectation to preclude coverage.

Allstate argues that under both Pennsylvania and New Jersey law, Ethan Woods' conduct falls squarely within the Policy's exclusion for intentional or criminal acts.  Again, the exclusionary language at issue states that "[w]e do not cover any bodily injury or property damage intended by or which may **reasonably be expected to result from** the intentional or **criminal**

---

4.

10

**acts** or omissions of, any insured person." (emphasis added). This Court agrees that the plain language of the exclusion in the Policy precludes coverage in this case; regardless of Ethan Woods' intent (which the Defendants spend most of their briefs discussing), Ethan Woods committed a criminal act that caused harm that could reasonably be expected to result from throwing a glass bottle - intent need not enter the equation.

Defendants rely upon cases that are patently distinguishable from the instant situation in that the policy language in those cases require subjective intent to injure.  Specifically, Minnesota Fire & Cas. Co., v. Greenfield, 579 Pa. 333 (2004), State Farm & Cas. Co., v. Dunlavey, 197 F. Supp. 2d 183 (E.D. Pa. 2001), and Eisenman v. Hornberger, 438 Pa. 46 (1970), are all distinguishable from the issues in this case.  First, the Eisenman decision is inapposite as the policy exclusion at issue dealt with damage "caused intentionally by or at the direction of the Insured."  Eisenman, 438 Pa. at 49.  Clearly intent was required in that case, and the Policy language at issue differs here.

Both the Greenfield and Dunlavey cases contain exclusions for injury that is "expected or intended" by the insured, and focus on the "intent" aspects of the exclusion and do not contain a discussion on a criminal act resulting in foreseeable injury. In Dunlavey, the central issue was whether coverage was precluded

"because the underlying assault was an intentional act that does not qualify as an 'occurrence.'"  <u>Dunlavey</u>, 197 F. Supp. 2d at 185-86.  Additionally, the clause at issue is repeatedly referred to as an "intended harm exclusionary clause," whereas the applicable clause in this case is far broader.  Similarly, the <u>Greenfield</u> case discusses a policy exclusion that does not contain the criminal acts language and, like <u>Dunlavey</u>, focuses almost exclusively on an interpretation of intent.[4]

The New Jersey cases cited in the alternative by Defendants suffer from similar infirmities.  For example, in <u>Voorhees v. Preferred Mutual Ins. Co.</u>, 128 N.J. 165 (1992), the policy excluded coverage for "liability *** caused intentionally" only, lacking much of the relevant exclusionary language present in the instant Policy.  Similarly, the <u>Cumberland Mutual Fire Ins. Co., v. Murphy</u>, 183 N.J. 344 (2005), decision discussed policy language that excluded injury that was a "consequence of an insured's willful harm or knowing endangerment."  <u>Id.</u> at 347.

The Martins argue that Ethan Woods' admission of guilt in the criminal proceeding does not preclude coverage because a prior admission of guilt does not preclude re-litigation of the issue of intent.  In doing so, the Martins ignore the plain

---

[4] Notably, the court found that coverage was precluded for damages "arising out of an insured's criminal acts regarding a Schedule I substances, as a matter of overriding public policy." <u>Greenfield</u>, 579 Pa. at 352.

language that does not require both an intentional and criminal act.  Instead, the language is disjunctive and requires only an intentional <u>or</u> a criminal act that resulted in reasonably foreseeable harm.

It is beyond cavil that Ethan Woods committed a criminal act - he pled guilty to Third Degree Aggravated Assault and there was a factual basis established for that plea.  <u>See</u> D'Aloia Decl. Ex. I & Docket No. 45 Ex. A (filed under seal).  Thus, there is no issue of fact as to whether Ethan Woods engaged a criminal act as set forth in the Policy.  <u>See</u> <u>Phila. Indem. Ins. Co. v. Healy</u>, 156 Fed. Appx. 472, 478 (3d Cir. 2005)(finding that the <u>Schmitt</u> case states the proper legal rule that "[a]lthough a conviction may or may not be conclusive evidence of the underlying facts, it is to be accorded preclusive effect with respect to the insured's commission of the crime.")(quoting <u>Allstate Ins. Co. v. Schmitt</u>, 238 N.J. Super. 619, 570 A.2d 488, 495 (N.J. Super. App. Div. 1990)).

<u>Allstate Ins. Co., v. Schmitt</u>, 238 N.J. Super. 619, 570 A.2d 488, 495 (N.J. Super. App. Div. 1990), contained exclusionary language nearly identical to the language at issue here: "[w]e do not cover any bodily injury. . . which may reasonably be expected to result from the intentional or criminal acts of an insured person. . . ."  <u>Id.</u> at 623.  Like the Defendants in this matter, the defendants in <u>Schmitt</u> relied heavily on arguments that the

13

insured did not intend to injure.  The <u>Schmitt</u> court made clear, however, that "the factual predicate to the exclusion is either the commission of a crime, whether or not intentional, or the doing of an intentional act." <u>Id.</u> at 626.  Thus, the criminal act in itself triggers the exclusion, regardless of Woods' intent.

Even if this Court were to apply Pennsylvania law at the Defendants' urging, there are cases with policy language on point that urge a result in Allstate's favor.  In <u>Allstate Ins. Co., v. Ervin</u>, 2006 U.S. Dist. LEXIS 56802 (E.D. Pa. Aug. 14, 2006), the policy language at issue was nearly identical to this case: "[w]e do not cover any bodily injury or property damage intended by or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person." <u>Id.</u> at *7.  In <u>Ervin</u>, the court found that, because the defendants were convicted for criminal simple assault, Allstate was not obligated to defend or indemnify them pursuant to the criminal acts exclusion.  <u>Id.</u> at 13.  Also, in <u>Continental Ins. Co. v. Kovach</u>, 2007 U.S. Dist. LEXIS 59472 (W.D. Pa. Aug. 14, 2007), the policy contained nearly identical exclusionary language to that at issue in the Allstate Policy and the court found that the policy's criminal acts exclusion was not ambiguous and was dispositive of the case.  Because an insured under the policy had furnished alcohol to a minor, a criminal act, and because injury to the

14

public "is a foreseeable consequence of supplying alcohol to a minor" the exclusion applied.  Id. at 31.

Because it is clear that a criminal act is present, the final issue then is whether the injury falls within the exclusionary language regarding reasonable foreseeability.  As stated in Schmitt, which contained nearly identical exclusionary language, the "reasonably be expected to result" language does not add a "subjective element to the exclusion and require a conscious desire to inflict injury upon another." Id.  Instead, this language acts as a "clamp or restriction on the exclusionary clause's otherwise boundless applicability." Id.  Defendants argue that Kristi Martin's injuries were an unforeseeable consequence of Woods' actions as she was an "innocent passer-by who happened to be in the wrong place at the wrong time."  Docket No. 31 at 7.  Again, the Policy excludes injury "which may reasonably be expected to result from" the intentional or criminal acts of the insured.  Moreover, this exclusion encompasses "**bodily injury** . . . of a different kind or degree than intended or reasonably expected" or "**bodily injury . . .** sustained by a different person than intended or reasonably expected."  No reasonable jury could find that the injuries sustained by Kristi Martin were the "remote or highly extraordinary or improbable consequences of the insured criminal . . . conduct ."   Maffei Decl. Ex. A at 18 (emphasis in

15

original).  <u>Schmitt</u>, 238 N.J. Super. at 626.

Indeed, Ethan Woods' own testimony makes clear that this type of injury was a reasonably forseeable consequence of his actions.  For example, he stated that "I threw a bottle, like, kind of down, like directly at their feet."  Maffei Decl. Ex. E at 4-5.  Moreover, in his deposition Ethan Woods answered questions that make it clear that the broken glass shattering and cutting someone's leg could reasonably be expected to result from his actions:

Q: And you deliberately threw it, is that right?

A: Yes.

Q: And when you deliberately threw it, you knew that bottle was made of glass, right?

A: Yes.

D'Aloia Decl. Ex. N. - E. Woods Dep. at 46: 13-18.  Woods also testified that he knew it could break if he threw it to the ground and, in fact, intended that it break when he threw it. <u>Id.</u> at 53: 6-12.  Despite Defendants' arguments to the contrary, the thrown glass bottle breaking and lacerating the skin of someone in the area is not an "idiosyncratic, unforseeable or wholly attenuated consequence of the fracas."  <u>See e.g.</u>, <u>Allstate Ins. Co., v. Burrough</u>, 120 F. 3d 834 (8th Cir. 1997) (finding that "flashing" of handgun in direction of victim that then accidentally discharged and left him paralyzed was subject to

exclusionary provisions of policy stating that Allstate did "not cover any bodily injury. . . which may reasonably be expected to result from the intentional or criminal acts . . . of any insured person.").

Ethan Woods testified that he threw the glass bottle, intending that it would break, at the feet of those near him. The fact that the person injured was not a person involved in the incident is of no moment.  The Policy states that the exclusionary language still applies even if "b) such **bodily injury** or **property damage** is of a different kind or degree than intended or reasonably expected; or c) such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected."  Maffei Decl. Ex. A at 18 (emphasis in original).  Thus, the fact that it was an innocent passerby and not the individuals involved in the dispute does not effect the ability of Allstate to disclaim coverage.  Finally, whether Ethan Woods intended the result is irrelevant - "[w]ere we to construe the disjunctive phrase, 'reasonably be expected,' to also require subjective intent on the part of the insured, the clause would be wholly redundant."  Id. at 627.

Because this Court finds that there is no issue of fact as to whether Allstate can disclaim coverage based on the Policy language discussed above, it need not reach the parties' alternative arguments regarding whether this incident falls

within the definition of "occurrence" under the Policy and whether Ethan Woods subjectively intended injury, including his potential intoxication at the time of the incident.

**Conclusion:**

Thus, for the aforementioned reasons, this Court finds that the provisions of the Policy explicitly allow Allstate to disclaim coverage for the incident at issue.  Therefore, Allstate's motion for summary judgment will be granted and the Martins' motion will be denied.  An appropriate Order will issue this date.

Dated: April 8, 2008                    s/Renée Marie Bumb
                                        RENÉE MARIE BUMB
                                        UNITED STATES DISTRICT JUDGE